235 F.2d 440
 ESTATE of Regina L. HERRMANN, Deceased, G. C. Herrmann, Independent Executor, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
George C. HERRMANN, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 15908.
 United States Court of Appeals Fifth Circuit.
 June 28, 1956.
 
 COPYRIGHT MATERIAL OMITTED Arthur Glover, Amarillo, Tex., Russell & Glover, Amarillo, Tex., of counsel, for petitioner.
 S. Dee Hanson, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Marvin W. Weinstein, Attys., Dept. of Justice, John Potts Barnes, Chief Counsel, and Charles E. Lowery, Sp. Atty., I.R.S., Washington, D. C., for respondent.
 Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 George C. Herrmann and Regina L. Herrmann, husband and wife, who will in this opinion be called the taxpayers, in 1950 transferred shares of corporate stock to a trustee under an agreement creating separate trusts for six grandchildren, of whom the eldest was in her eleventh year. In the agreement it was provided:
 
 
 2
 "2. The annual net income of each trust shall be distributed to or expended for the use and benefit of its respective beneficiary or beneficiaries by the Trustee. The Trustee also may distribute to each grandchild from his or her respective trust all or any portion of its corpus to the extent deemed necessary or advisable in the sole judgment of the Trustee for his or her education, maintenance and support.
 
 
 3
 * * * * *
 
 
 4
 "4. Each trust shall terminate when the beneficiary for whom it was named attains the age of twenty-five years. Upon termination, all properties then remaining in each trust, together with any accumulations thereto, shall be delivered to and vest, in fee simple, in the beneficiary for whom it was named if such beneficiary is then living."
 
 
 5
 It was also provided that if a beneficiary died before the trust set up for him or her should terminate, the then existing property of such trust should vest in persons designated with an ultimate conditional gift over to a charity. The trusts were irrevocable and there was no possibility of the taxpayers ever becoming entitled to either income or principal of the trusts.
 
 
 6
 The taxpayers filed gift tax returns for the year in which the trusts were created. Other gifts, not here involved, had been made by the taxpayers. Each claimed exclusions in the amount of $18,750, of which $5,250 was allocated by the taxpayers to the value of the stock transferred to the trustees. Section 454 of the Revenue Act of 1942 amended Section 1003 of the Revenue Code of 1939, defining "net [taxable] gifts," by adding thereto the following: "In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1943 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year." 26 U.S.C.A. § 1003.
 
 
 7
 The Commissioner held that the transfers in trust were gifts of future interests, reduced the amount of the exclusion of each taxpayer by $5,250, and determined tax deficiencies resulting from the reductions of the exclusions. The Tax Court, in a Memorandum Opinion, sustained the Commissioner and rendered decisions in the case finding deficiencies. Both taxpayers have petitioned for review and the appeals are here consolidated.
 
 
 8
 The committee reports of Congress,[1] quoted with apparent approval by the Supreme Court of the United States,[2] explain future interests as follows:
 
 
 9
 "The term `future interests in property' refers to any interest or estate, whether vested or contingent, limited to commence in possession or enjoyment at a future date. The exemption being available only in so far as the donees are ascertainable, the denial of the exemption in the case of gifts of future interests is dictated by the apprehended difficulty, in many instances, of determining the number of eventual donees and the values of their respective gifts."
 
 
 10
 The Treasury Department has, by regulation, defined "future interests" in this language:
 
 
 11
 "`Future interests' is a legal term, and includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commence in use, possession, or enjoyment at some future date or time." U.S.Treas.Reg. 108, § 86.11.
 
 
 12
 The quoted regulation is an appropriate provision to carry out the intent of the Congress as expressed in the statute and explained in the Committee reports. Ryerson v. United States, 312 U.S. 405, 61 S.Ct. 656, 85 L.Ed. 917; United States v. Pelzer, supra; Fondren v. Commissioner, 324 U.S. 18, 65 S.Ct. 499, 89 L.Ed. 668; Commissioner of Internal Revenue v. Disston, 325 U.S. 442, 65 S.Ct. 1328, 1331, 89 L.Ed. 1720, 158 A.L.R. 166.
 
 
 13
 The disposal of property in trust under an agreement deferring distribution of principal may be regarded, for Federal gift tax purposes, as a twofold transfer creating one interest in the income and another in the principal. Either or both may be present interests to which the exclusion would be applicable, and either or both may be future interests with respect to which the exclusion would be denied. The fact that one of these may be regarded as a future interest does not of itself prevent the other from being a present interest. There seems to be no doubt but that here the gifts of principal were of future interests. The enjoyment of principal is deferred until the beneficiaries attain the age of twenty-five, four years beyond the termination of minority. Applicable here is the following:
 
 
 14
 "Upon the facts, furthermore, the trusts hardly can be taken as designed primarily for the periods covered by the children's minority. They did not terminate with the ending of that period. The graduated scale of payments, beginning at age twenty-five and ending at thirty-five, together with the prohibition of payment earlier except in case of necessity, shows principal concern for a period of adult life. And, from the fact that this would be the period when the grandchildren normally would be assuming family responsibilities of their own, the inference well might be drawn that the chief purpose was to give aid and some security in that time. The contingent provision, in case of earlier need, cannot be taken therefore to represent the donors' primary concern as expressed in the instruments. Cf. Fisher v. Commissioner, 9 Cir., 132 F.2d 383, 386. But, whether so or not, in the particular circumstances that need was but a contingency to be realized, if at all, in the future. And, until realized, the contingency stood squarely in the way of any child's receiving a single dollar from the fund." Fondren v. Commissioner, supra [324 U.S. 18, 65 S.Ct. 504].
 
 
 15
 Where the distribution of trust corpus to a beneficiary is or may be deferred until he attains a designated age, at least where the age is beyond that when the beneficiary attains majority, a future interest has been created. Fisher v. Commissioner, 9 Cir., 1942, 132 F.2d 383; Sensenbrenner v. Commissioner, 7 Cir., 1943, 134 F.2d 883; Commissioner of Internal Revenue v. Disston, supra.
 
 
 16
 The situation with respect to the payment of the trust income is different. The net income of each trust is to be distributed to or applied for the benefit of the beneficiary. As was said in Fondren v. Commissioner, supra, "Accordingly, it has been held that if the income of a trust is required to be distributed periodically, as annually, but distribution of the corpus is deferred, the gift of the income is one of a present interest, that of the corpus one in futuro." The direction to pay out the income was unconditional. There were no provisions as would result in the creation of a future interest as a discretion in the trustee to pay or withhold,[3] or to pay so much of income as necessary for support and maintenance.[4]
 
 
 17
 But for other reasons we conclude that the exclusion must be denied. There is a presumption that the Commissioner's determination is correct. The taxpayer, therefore, must not only show the right to the exclusion but the amount of it. "The taxpayer claiming the exclusion must assume the burden of showing that the value of what he claims is other than a future interest." Commissioner of Internal Revenue v. Disston, supra. The trust instrument not only directs the payment of net income to or for the beneficiaries but authorizes the distribution of all or any portion of principal if, in the sole judgment of the trustee, it is necessary or advisable for the education, maintenance or support of the beneficiary.
 
 
 18
 We believe the Court of Appeals for the Eighth Circuit pronounced a sound doctrine when it said:
 
 
 19
 "Because of the provision in the trust instrument granting the trustees the discretionary power to invade the principal of the trust estate for the benefit of any or all of the beneficiaries, the Commissioner contended and the Tax Court held that, in computing the present worth of gifts of trust income, the trust corpus should be reduced each year by the amount which the trustees were authorized to withdraw for the use of the beneficiaries. The result is a reduction in the present worth of the present interests of the donees as computed by the petitioner, and the determination of the deficiencies to which petitioner objects." Kniep v. Commissioner, 8 Cir., 1949, 172 F.2d 755, 757.
 
 
 20
 Where, as here, the trustee is authorized to distribute all or any part of the principal, the distribution, be it little or much, would result in a ratable reduction in the trust income and a proportional reduction in the income producing potential of the trust res. Since it cannot be known, at the creation of the trust, what part, if any, of the trust principal will be distributed, or when, if ever, any principal distributions will be made, there is no basis or formula by which the future interest can be valued, and the taxpayers are unable to meet the burden imposed on them to establish a value. Illustrative of the problems of valuation of future interests are Ryerson v. United States, supra, and Evans v. Commissioner, 3 Cir., 1952, 198 F.2d 435.
 
 
 21
 We are not unmindful that the rule relating to trusts for minors determinable upon attaining majority has been changed by the Congress in the Internal Revenue Code of 1954. Int.Rev.Code 1954, § 2503(c), 26 U.S.C.A. § 2503(c), but if the statute was applicable in point of time, which it is not, the facts of this case would not come within it.
 
 
 22
 We are in accord with the determination of the Commissioner and the principles applied by the Tax Court. The decision of the Tax Court is
 
 
 23
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 H.Rept. No. 708, 72d Cong., 1st Sess. p. 29; S.Rept. No. 655, 72d Cong., 1st Sess. p. 41
 
 
 [2]
 In United States v. Pelzer, 312 U.S. 399, 403, 61 S.Ct. 659, 661, 85 L.Ed. 913
 
 
 [3]
 Rassas v. Commissioner, 7 Cir., 1952, 196 F.2d 611
 
 
 [4]
 Hessenbruch v. Commissioner, 3 Cir., 1949, 178 F.2d 785