**Arnold VAN DEN WYMELENBERG,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**Eleanor VAN DEN WYMELENBERG,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**Nos. 65–C–85, 65–C–86.**

United States District Court
E. D. Wisconsin.

Sept. 12, 1967.

Everson, Whitney, O'Melia & Everson, Green Bay, Wis., for plaintiffs.

David A. Wilson, Jr. and Allen L. Schwait, Dept. of Justice, Washington, D. C., for defendant.

## DECISION

MYRON L. GORDON, District Judge.

A deficiency in gift taxes was assessed against the plaintiffs, who paid the assessment and commenced this action for refund. The case was tried upon a stipulation of facts which had been executed by the parties.

In 1961 the petitioners created a trust for their 12 grandchildren, all of whom were under the age of 21 at the time the trust was created. The trust agreement provided that the income of the trust property was to be distributed annually to the beneficiaries; however, the principal of the trust was not to be distributed to a beneficiary until he reached the age of 21.

As executed on July 6, 1961, the trust agreement did not enable a beneficiary to dispose of his interest before reaching age 21. It did not vest any interest in him or his estate in the event of his death prior to age 21. The parties have stipulated as follows:

"The original trust instrument does not conform to the requirements of § 2503(c) of the 1954 Code."

In September, 1963 the taxpayers entered into an amended trust agreement, which provided that it was being entered "as of this 6th day of July, 1961." In the amended trust agreement, the taxpayers attempted to correct what they contend was a mistake of fact in the original instrument. Thus, in paragraph 5 of the 1963 instrument it is provided as follows:

"* * * If any beneficiary of a basic share in the trust fund shall die before attaining 21 years of age, the share of such beneficiary shall descend in accordance with the terms of the last will and testament of·said beneficiary, or, if intestate, to his or her heirs at law."

The government contends that the 1963 document cannot retroactively reform the federal tax consequences of the original instrument. On the other hand, the taxpayers urge that there has been a mistake of fact which occurred when the 1961 instrument was executed. The taxpayers point out that they intended to have their trust qualify under § 2503(c) of the 1954 Internal Revenue Code. They urge that the mistake which occurred on the part of the scrivener in the preparation of the document is one which could be and was, in fact, reformed by the 1963 agreement.

It is also the contention of the taxpayers that in view of the fact that the income of the trust had to be paid out annually to the several minor beneficiaries, the original document qualified at least to that extent for exemption under the gift tax laws. Taxpayers claim that they are entitled to a refund of the gift taxes paid, based on the present value of the right to the income which each of the minor beneficiaries had under the original document.

I

## EFFECT OF AMENDING THE TRUST AGREEMENT

It is clear that the original trust agreement did not meet the exclusionary requirements of § 2503(c), and therefore it is crucial that the court determine whether the amendment of the trust agreement can be given retroactive effect in regard to federal gift taxes. Heretofore, there has been no judicial reformation in the. case at bar. The petitioners have suggested that they could go to a state court in Wisconsin for reformation, but they have not as yet done so. In effect, the

taxpayers would have this court reform the trust instrument and give it retroactive effect.

■ In my opinion, the taxpayers are not entitled to retroactive reformation to relieve them of a federal tax consequence. There are several decisions in which state courts have granted reformation nunc pro tunc. Such cases do not, however, operate to relieve a person from federal taxes (with one exception, which will be discussed *infra*). On the other hand, there are numerous holdings which assert that reformation will not be permitted when its impact is to alter the national revenue. Thus, in M. T. Straight's Trust v. Commissioner of Internal Revenue, 245 F.2d 327, 329 (8th Cir. 1957), the court said:

"The situation which determined the application of the income tax to these two years had occurred and become fixed before this reformation proceeding was filed. We believe it cannot be altered by a *nunc pro tunc* decree of a state court. The national revenue is not subject to such control."

In Sinopoulo v. Jones, 154 F.2d 648, 650 (10th Cir. 1946), the court made the following observation:

"While the judgment of the state court made the reformation of the trust retroactive and effective as of the date of the execution, this could not affect the rights of the government under its tax laws. It is a general rule that as between parties to an instrument a reformation relates back to the date of the instrument, but that as to third parties who have acquired rights under the instrument, the reformation is effective only from the date thereof."

A similar point is advanced in 10 Mertens, Law of Federal Income Taxation, § 61.03 (Rev. ed.).

The case of Flitcroft v. Commissioner of Internal Revenue, 328 F.2d 449 (9th Cir. 1964), must be distinguished. In that case, the state court's reformation was allowed by the federal court to have a retroactive effect on the tax laws. However, in that case the government

was provided with an opportunity to be a party to the state action, and the court said at page 459:

"It is our conclusion that the state court was correct in finding that it was the intention of the parties to create irrevocable trusts from their inception; that the decree of the state court adjudicated property rights and should be given effect in the federal courts; and that the decree of the state court was not in fact collusive, particularly in view of the fact that the District Director of Internal Revenue had full knowledge of the state court proceedings, having been joined initially as a party in that action."

■ In my opinion, the impact of the *Flitcroft Case* is that when the United States has an opportunity to participate in the state court when reformation is sought, such reformation may have a nunc pro tunc effect, even as it relates to federal taxes. However, this concept does not relieve the petitioners in the case at bar, who made their amendment by themselves without the intervention of a court of equity, and without the government having an opportunity to participate in the application for any such reformation.

In view of my conclusion that the original trust document of 1961 governs the gift tax assessment, there is no need to determine whether the amendment of 1963 satisfies the requirements of § 2503 (c) of the 1954 Code.

## II

## THE RIGHT TO THE DISTRIBUTION OF INCOME

■ Are the taxpayers entitled to annual exclusions under § 2503(b) by reason of the fact that paragraph 4 of the original trust instrument required the trustee to distribute the net income from the trust annually or at shorter intervals to the beneficiaries? § 2503(b) provides as follows:

"Exclusions From Gifts.—In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar

year 1955 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for purposes of subsection (a), be included in the total amount of gifts made during such year. Where there has been a transfer to any person of a present interest in property, the possibility that such interest may be diminished by the exercise of a power shall be disregarded in applying this subsection, if no part of such interest will at any time pass to any other person."

■ The right to the income of this trust was a gift of a present interest. Albright v. United States, 308 F.2d 739 (5th Cir. 1962); Jolley v. United States, 259 F.Supp. 315 (D.S.Car.1966). However, in order to qualify for the annual exclusion, the value of the present interest must be determinable as of the date of the creation of the trust. Fischer v. Commissioner of Internal Revenue, 288 F.2d 574 (3rd Cir. 1961).

At the date of the creation of the trust, the corpus consisted of real estate worth $132,500, subject to a mortgage of $82,500. The trustee, under paragraph 6 of the instrument, was given broad powers in regard to dealing with the property in trust. She was given the power to sell, grant options to purchase, and exchange or alter the assets of the trust. She was also empowered to determine whether any money or property coming into her hands was to be part of the income or part of the principal. Further, she could apportion between the principal and income, any loss or expenditure which might be incurred.

■ When a trustee is given the power to invade the corpus for the benefit of the beneficiaries, his actions, unless otherwise restricted, give him the power to alter the corpus and thereby affect the income which the trust will produce. A gift tax exclusion will be granted where the trustee is controlled by an ascertainable standard of invasion and where the prospects of such invasion are so remote as to be negligible. Jolley v. United States, *supra;* Newlin v. Commissioner

of Internal Revenue, 31 T.C. 451 (1958); Hugh McK. Jones v. Commissioner of Internal Revenue, 29 T.C. 200 (1957).

■ While the trustee in the case at bar does not have direct power to invade the corpus for the benefit of the grandchildren, she does, however, have powers which could significantly affect the income available to the beneficiaries. The trustee not only can apportion between principal and income, but also can alter the trust assets. By use of the latter prerogative, the trustee could revise the asset holdings so that only a minimal amount of income was derived for the present; on the other hand, the trustee could change the corpus to a "wasting asset" which would produce a great amount of income while consuming the principal. None of these decisions on the part of the trustee would necessarily be improper or a violation of her fiduciary responsibilities.

The plaintiffs seek to establish the fact that a readily ascertainable portion of income was available to the beneficiaries by showing what has actually occurred during the five years that the trust has been in operation. This technique is not persuasive in establishing that the value of the interest payable to the beneficiaries was reasonably certain at the time of the trust's creation. Commissioner of Internal Revenue v. Disston, 325 U.S. 442, 65 S.Ct. 1328, 89 L.Ed. 1720 (1945). In Schayek v. Commissioner of Internal Revenue, 33 T.C. 629 (1960), the tax court declined to accept similar evidence as establishing that a determinable amount of income was payable to the beneficiaries.

I conclude that the plaintiffs are not entitled to exclusionary benefits under § 2503(b) of the 1954 Code.

### III

### CONCLUSION

The amendment to the trust was ineffective to relieve the plaintiffs of their federal tax responsibilities. In addition, the right to the distribution of income, while a gift of a present interest was not

sufficiently determinable as of the day of the creation of the trust to qualify for an exclusion.

Counsel for the defendant is requested to prepare an appropriate order for signature and present it to the court after first exhibiting the same to petitioners' counsel.